UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

KATHLEEN D'AGOSTINO;
DENISE BOIAN; JEAN M. DEMERS;
DENISE FARLEY;
STEPHANIE KOZLOWSKI- HECK;
LESLIE MARCYONIAK;
ELIZABETH MONGEON;
LAURIE SMITH; and KELLY WINSHIP,

                Plaintiffs,

v.                                          Civil Action No. 1:14-cv-11866-LTS

GOVERNOR DEVAL PATRICK,
In His Official Capacity as Governor
of the Commonwealth of Massachusetts;
THOMAS L. WEBER,
in His Official Capacity as the Director
of the Department of Early Education and Care;
and SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 509,

                Defendants.

---

**MEMORANDUM AND ORDER**

March 13, 2015

SOROKIN, J.

    I.      INTRODUCTION

Plaintiffs, individuals who operate child care businesses in their homes, seek to declare unconstitutional, 2012 Mass. Act 189, "An Act Relative to Early Education and Care by Family Child Care Providers" codified at Mass. Gen. Laws ch.15D §§ 2(u), 17(a)-(k); 150E, § 7(c); and ch.180, §17G (the "Act") which designates as public employees, for purposes of collective

1

bargaining, those family child care providers who accept government subsidies through vouchers. Plaintiffs allege that they are being compelled to associate with the defendant, Services Employees International Union, Local 509 ("SEIU" or "Union") as their exclusive representative in violation of their First Amendment rights. Defendants move to dismiss the Amended Complaint on the grounds Plaintiffs have failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For the reasons set forth herein, Defendants' Motion is ALLOWED and Plaintiffs' First Amended Complaint is hereby DISMISSED.

II. Relevant Facts

The facts are undisputed. On August 1, 2012, then Governor Deval Patrick signed into law, 2012 Mass. Acts ch.189 entitled "An Act Relative to Early Childhood Education and Care by Family Child Care Providers." The Act, codified at Mass. Gen. Laws. ch. 15D, § 17, incorporates pre-existing Massachusetts labor statutes set forth in Mass. Gen. Laws ch. 150E *et. seq*. A "family child care provider" ("Provider") is a person "who provides family child care services on behalf of low-income and other at risk children and receives payment from the Commonwealth for such services pursuant to a rate structure for voucher and contracted payments." Mass. Gen. Laws ch. 15D, § 17(a). Providers are employees of the Commonwealth for the limited purpose of collective bargaining. Mass. Gen. Laws ch. 15D, §§ 17(b)-(c). Providers are not employees of the Commonwealth for any other purpose. Id. The Act allows Providers to elect a union to be their "exclusive representative" for the purpose of collective bargaining. Mass. Gen. Laws ch. 15D, § 17(b); ch. 150E, § 2.

The exclusive representative "shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization

membership." Mass. Gen. Laws ch. 150E, § 5. Chapter 150E, § 6 obligates the Massachusetts Department of Early Education and Care ("EEC"), on behalf of the Commonwealth, to negotiate with the exclusive representative over traditional mandatory subjects of bargaining. These include "wages, hours, standards or productivity and performance, and any other terms and conditions of employment," ch. 150E, § 6, as well as "developing and encouraging greater education and training opportunities for family child care Providers, improvement of recruitment and retention of qualified Providers and reimbursement and payment procedures." Mass. Gen. Laws ch. 15D, § 17(g). The Act also provides that the EEC must "bargain about the rate structure for voucher and contracted payments." Mass. Gen. Laws ch. 15D, § 17(h). In addition to requiring bargaining over mandatory subjects, the Act allows for negotiation over permissive subjects, stating that "[n]othing in this section shall inhibit the parties from discussing other permissive subjects of bargaining, including, but not limited to, the rate structure for family child care Providers." Mass. Gen. Laws ch. 15D, § 17(h).

The selection of an exclusive representative under Chapter 150E does not require any Providers to join the Union. Mass. Gen. Laws ch. 150, § 2. Massachusetts law protects the "right to refrain" from joining a union, ch. 150E, § 2, and makes it a "prohibited practice" to restrain or coerce any employee in the exercise of that right. Mass. Gen. Laws ch. 150E, § 10(a)(1), (b)(1). Moreover, individual Providers retain the right to bypass the exclusive representative and present grievances directly to EEC, with the caveat that the union has an opportunity to be present. Mass. Gen. Laws ch. 150E, § 5. Any remedy EEC implements, "shall not be inconsistent with the terms of an agreement then in effect between the employer and the exclusive representative." Mass. Gen. Laws ch. 150E, § 5.

EEC recognized SEIU as the exclusive representative for the Providers as certified <u>In the Matter of Dept. of Early Education and Care and Local 509, Service Employees International Union</u>, Case No. WMAS-12-2391 by the Commonwealth of Massachusetts, Department of Labor Relations on November 7, 2012. Doc. No. 1-1 at 2. Plaintiffs have not challenged the election process, nor have they alleged that the process established in the legislation, or implemented thereafter by the Commonwealth, precluded--in a First Amendment sense--anyone other than SEIU from competing for the position of exclusive representative.[1]

After certification, SEIU negotiated with EEC and the parties entered into a collective bargaining agreement ("CBA"), which remains in effect through June 30, 2016. Doc. No. 15 ¶ 23; Doc. No. 1-1. The CBA addresses such things as payment rates, training, and grievance procedures, and paid holidays and professional days for family child care providers. Doc. No. 1-1. The CBA also obligates EEC to review and assess other issues affecting family child care providers (such as the need for non-standard child care hours, children with special needs, and paid time-off), and to conduct face-to-face trainings and webinars. <u>Id.</u>

Plaintiffs contend they are being compelled to associate with SEIU "for expressive purposes" because of SEIU's exclusive representation. Doc. No. 15 ¶¶ 32, 33. Specifically, they argue the Act thrusts them into a mandatory agency relationship with SEIU for petitioning and contracting with the Commonwealth, and affiliates them with the SEIU's petitioning, contracts, and policy positions. Doc. No. 25 at 7-11. Thus, Plaintiffs argue such compulsion violates their rights to freedom of association and expression under the First Amendment of the United States

---

[1] The Act was passed after the Massachusetts voters rejected a ballot initiative that called for unionizing of family care providers. Doc. No. 25 at 6. At the hearing Plaintiffs suggested that the Commonwealth "picked" SEIU to serve as the exclusive representative based upon the timing of the legislation and its election. The Plaintiffs, however, do not set forth any allegation that the Commonwealth determined, in any meaningful sense, who the exclusive representative would be.

Constitution, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983. Doc. No. 15 ¶ ¶ 32, 33. They make no challenge, however, to the substantive provisions of either the Act or the CBA; they confine their claim solely to the First Amendment.

III. DISCUSSION

A. Standard of Review

"Where a party challenges the constitutionality of a statute on its face, and further factual development is immaterial to dispositive legal issues, a complaint may be dismissed for failure to state a claim under Rule 12(b)(6)." Brown v. Dep't of Veterans Affairs, 451 F. Supp. 2d 273, 277 (D. Mass. 2006) (citing Cook v. Rumsfeld, 429 F. Supp. 2d 385, 387, 405 (D. Mass. 2006) (dismissal under Rule 12(b)(6) appropriate "where there are dispositive issues of law that bar the plaintiffs' claims even if they are able to prove the factual assertions made in the complaint")).

B. Relevant Supreme Court Cases

There is no dispute the First Amendment protects every individual's right to associate for purposes of petitioning the government and influencing public policy. Citizens Against Rent Control v. City of Berkeley, 454 U.S. 290, 294-95 (1981). This right necessarily includes the right not to associate. Knox v. Serv. Employees Int'l Union, Local 1000, 132 S. Ct. 2277 (2012) (citation omitted). As to these legal truisms the parties agree. The parties disagree, however, with their respective reading and application of Supreme Court precedent and the meaning of SEIU's exclusive role.

**1. Minnesota v. Knight**

In Minnesota State Board for Community Colleges v. Knight, 465 U.S. 271 (1984), the Supreme Court considered a constitutional challenge to the Minnesota Public Employment Labor Relations Act ("PERLA"). PERLA enabled public employees to select an exclusive bargaining

5

representative to "meet and negotiate" and "meet and confer" with their government employer. Id. at 274. The "meet and negotiate" provision related to traditional collective bargaining issues, but the "meet and confer" provision related to policy issues which were outside the scope of collective bargaining. Id. at 274-75. The Minnesota Community College Faculty Association (MCCFA) was elected as the exclusive representative of the faculty for purposes of "meet and negotiate" and they also organized "meet and confer" committees on individual campuses. Id. at 275. The committee members were all faculty members who belonged to MCCFA. Id. at 276.

During the district court proceedings, non-member MCCFA faculty challenged the constitutionality of PERLA as it related to both "meet and negotiate" and "meet and confer" provisions. Knight v. Minn. Cmty. Coll. Faculty Assoc., 571 F. Supp. 1, 4, 6 (D. Minn. 1982). Plaintiffs argued the MCCFA was inherently political and therefore violated their First Amendment associational rights by compelling association. Relying on Abood v. Detroit Board of Education, 431 U.S. 209 (1977), which held that non-union public employees could be compelled to pay a fee for those activities related to collective bargaining, the district court in Knight held that the exclusive representation for purposes of "meet and negotiate" was constitutional because it was related to collective bargaining. Knight, 571 F. Supp. at 6. The issue for the district court turned on whether the MCCFA's exclusive representation related to collective bargaining activities. Id. Accordingly, with respect to the "meet and negotiate" provision, the district court held MCCFA's activities related to collective bargaining and therefore the court upheld the constitutionality of that part of PERLA. Id. The Supreme Court

affirmed summarily this part of the district court's decision. Knight v. Minn.Cmty. Coll. Faculty Assoc., 460 U.S. 1048 (1983).[2]

However, with respect to the "meet and confer" provision of PERLA, the district court held that by permitting the MCCFA to select only its own members, non-MCCFA faculty were deprived of their constitutional rights. Knight, 571 F. Supp. at 9. Finding no compelling interest for the state to exclude non-MCCFA from the selection of committee members for the "meet and confer" meetings, the district court granted declaratory relief and enjoined MCCFA from selecting "meet and confer" representatives without affording all faculty, including the non-MCCFA faculty, an opportunity to participate in a selection process. Id. at 11, 13.

On appeal to the Supreme Court of this part of the district court's decision, Justice O'Connor writing for the majority, stated the question was whether the "restriction on participation in the nonmandatory-subject exchange process violate[d] the constitutional rights of professional employees within the bargaining unit who are not members of the exclusive representative and who may disagree with its views." Minn. State Bd. for Cmty. Coll. v. Knight, 465 U.S. 271, 273 (1984). The Supreme Court reversed the district court, holding the "meet and confer" provision of PERLA was constitutional. Id. at 290. In so holding, the Court reasoned, in relevant part, that the non-MCCFA members were not compelled to associate, but were instead free to express their views on the subject of educational policy and were free to associate with whomever they chose because membership in MCCFA was not required by PERLA. Id. at 286. Further, although the MCCFA's views may be considered to be the faculty's official collective position, there remained a recognition that not every instructor agrees with the official faculty view on every policy question. Id. at 276. Like the respondents in Knight, Plaintiffs here are not

---

[2] A Supreme Court's summary affirmance is binding. Auburn v. Police Union Carpenter, 8 F.3d 886, 894 (1st Cir. 1993).

required to join SEIU. They are free to express their views and to associate with whomever they chose. Moreover, there exists the inherent recognition that not all non-SEIU members will agree with their views.

Nonetheless, Plaintiffs insist that Knight is not controlling because it is not a "compelled association case" and "addressed only whether it is constitutional to exclude employees from union bargaining sessions with public officials." Doc. No. 25 at 13. Not so. The Supreme Court did, indeed, consider the issue of compelled association holding specifically that the "State has in no way restrained appellees'…freedom to associate *or not to associate* with whom they please, including the exclusive representative." Knight, 465 U.S. at 288 (emphasis added). And, the Supreme Court reiterated:

> Similarly, appellees' associational freedom has not been impaired. Appellees are free to form whatever advocacy groups they like. They are not required to become members of MCCFA…Appellees may well feel some pressure to join the exclusive representative in order to give them the opportunity to serve on the "meet and confer" committees or to give them a voice in the representative's adoption of positions on particular issues. That pressure, however, is no different from the pressure they may feel to join MCCFA because of its unique status in the "meet and negotiate" process, a status the Court has summarily approved. Moreover, the pressure is no different from the pressure to join a majority party that persons in the minority always feel. Such pressure is inherent in our system of government; it does not create an unconstitutional inhibition on associational freedom.

Id. at 289-90 (emphasis added).

Finally, Justice Brennan joining the dissent in Knight, was of the view that the case involved two First Amendment issues—the free exchange of ideas and, the right to be free from compelled association. Id. at 297. In his opinion the "meet and confer" provisions violated the non-MCCFA members' First Amendment rights because it forced them to make a Hobson's choice – the choice between their right to voice their views, and their right not to be compelled to associate. Id. The majority, aware of the dissent, did not adopt its reasoning.

Thus, application of Knight would lead to DISMISSAL of Plaintiffs' Amended Complaint.

**2. Harris v. Quinn**

In the face of Knight, Plaintiffs argue the recent Supreme Court decision in Harris v. Quinn, 134 S. Ct. 2618 (2014), makes clear that collectivizing child care businesses cannot survive constitutional scrutiny. Doc. No. 25 at 4. This Court does not agree with Plaintiffs' reading of Harris. In Harris, Illinois unionized, for purposes of petitioning the State over its Medicaid rates and policies, "personal assistants," who provide in-home care to certain disabled Medicaid participants pursuant to the Home Services Program, known as the "Rehabilitation Program," as well as the Home-Based Support Services Program, the "Disabilities Program." Harris, 134 S. Ct. at 2624-26. SEIU was elected as the exclusive collective bargaining representative for the personal assistants who provided services under the Rehabilitation Program. Id. at 2626.³ The personal assistants, who are members of the union, were required to pay union dues and membership fees, and non-members were required to pay their "fair-share." Id. Non-union members claimed that the "fair share fees" violated their freedom of speech and freedom of association under the First and Fourteenth Amendments. Id. The petitioners, as noted by the Supreme Court, did not "challenge the authority of the SEIU-HII to serve as the exclusive representative of all the personal assistants in bargaining with the State. All they s[ought] is the right not to be forced to contribute to the union, with which they broadly disagree." Id. at 2640.⁴

---

³ The Court declined to address petitioners' claim as it related to the Disability Program, see Section D, infra.
⁴ After Harris, the Defendants agreed not to collect any compulsory service fees from Providers and Defendants have stated their intention to enter into a Memorandum of Understanding that rescinds the service fee requirements. Am. Compl. ¶ 30. No fee has been collected.

9

In answer to the question presented, the Supreme Court held that the personal assistants could not be compelled to pay the fair share fees to the union. Id. at 2644. In so holding, the Supreme Court criticized the decision in Abood, which held that public employees could be compelled to pay an agency fee to the union if the fee was for collective bargaining purposes, id. at 2632, and limited Abood's reach to "full-fledged public employees." Id. at 2638 ("[W]e therefore confine Abood's reach to full-fledged state employees"). Plaintiffs argue because Harris held it unconstitutional to compel non full-fledged public employees to pay a fair share fee, then, as non-full-fledged public employees, they likewise cannot be compelled to accept the union as their exclusive representative. Doc. No. 25 at 3. One does not necessarily, however, follow the other. There is no conflict in a determination that a non-full-fledged public employee cannot be compelled to pay a fair share fee, but allowing the union to be the exclusive representative, where the employee is not compelled to join the union. As the Harris court noted, "[a] union's status as exclusive bargaining agent and the right to collect an agency fee from non-members are not inextricably linked." Harris, 134 S. Ct. 2640.[5]

C. Imposition of Fiduciary Duty or Speaking Role

Plaintiffs argue next that the Act creates a mandatory fiduciary agency relationship between themselves and SEIU which is unconstitutional. Doc. No. 25 at 9. Specifically, Plaintiffs point out that the relevant state statutes vest in SEIU, as the exclusive representative,

---

[5] As further noted by the Supreme Court in Harris, "employees in some federal agencies may choose a union to serve as the exclusive bargaining agent for the unit, but no employee is required to join the union or to pay any union fee." 132 S. Ct. at 2640. The Harris court did not indicate any constitutional concerns about the exclusive bargaining agents in federal agencies where, pursuant to 5 U.S.C. § 7102, employees are not required to join or pay any union fee. see also, City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp't Comm'n.,429 U.S. 167, 178 (1976) ("Wisconsin has adopted, as unquestionably the State constitutionally may adopt, a statutory policy that authorizes public bodies to accord exclusive recognition to representatives for collective bargaining chosen by the majority of an appropriate unit of employees.") (Brennan, J. concurring).

"the right to act for and negotiate agreements covering all employees in the unit." Mass. Gen. Laws. ch. 150E, § 5. From this provision, Plaintiffs reason that the Commonwealth has made SEIU the speaker for Plaintiffs, as their agent, resulting in an unconstitutional association within the meaning of the First Amendment. This same argument, however, was rejected in Bierman v. Dayton, 2014 U.S. Dist. LEXIS 150504, at *19 (D. Minn. Oct. 21, 2014), an analogous case wherein home health care workers objected to SEIU being their exclusive representative for collective bargaining issues. There, the court determined:

> Additionally, the fact that, because it has been certified, SEIU owes a fiduciary-like duty to Plaintiffs "fairly and equitably to represent all employees . . ., union and non-union, within the relevant unit," Abood, 431 U.S. at 221, in no way infringes Plaintiffs' rights. Plaintiffs owe no corresponding duty to SEIU. Plaintiffs cite no authority for the proposition that the imposition of a legal duty on an entity impermissibly burdens the rights of the beneficiaries of that duty. In any event, the duty of fair representation imposed on the union actually protects bargaining unit members' rights not to associate with the union. It bars the union from discriminating against them when bargaining and administering a collective bargaining agreement. See, e.g., Lehnert v. Ferris Faculty Ass'n, 500 U.S. 507, 556, 111 S. Ct. 1950, 114 L.Ed. 2d 572 (1991) (Scalia, J., concurring in part and dissenting in part).

Id.

This Court agrees with the reasoning in Bierman. In addition, this Court considers the language from 150E § 5, cited by the Plaintiffs, in light of the entire statutory scheme. Bennett v. City of Holy, 362 F.3d 1, 10 (1st Cir. 2004) ("The task of statutory construction often is informed by reading the whole of a statute."). Despite the union's "exclusive" status, an "employee may present a grievance to his employer and have such grievance heard without intervention by the exclusive representative of the employee organization…." Mass. Gen. Laws ch. 150E, § 5 ("provided that the exclusive representative is afforded the opportunity to be present at such conferences and that any adjustment made shall not be inconsistent with the terms of an agreement then in effect between the employer and the exclusive representative").

11

Moreover, Providers are free to communicate with EEC on their own, with any association they choose, and, on any issue they choose. That is, non-union Providers can engage in their own speech to oppose, or decline to speak at all, or agree and disagree with SEIU. Lehnert v. Ferris Faculty Ass'n., 500 U.S. 507, 521 (1991). Plaintiffs' "free speech rights are not unconstitutionally burdened because" they may "oppose[] positions taken by [SEIU] in its capacity as collective-bargaining representative." Id. at 517. Read as a whole, therefore, the Act does not compel Plaintiffs to do, or not do anything (distinguishing additionally, this case from the compelled fair share fee issue in Harris).

The question then, is whether the statutory scheme challenged by Plaintiffs, associates them with the exclusive representative's speech within the meaning of the First Amendment. Plaintiffs rely primarily on Mulhall v. UNITE HERE Local 355, 618 F. 3d 1279 (11th Cir. 2010). There the court stated "[i]f United is certified as the majority representative of…employees, Mulhall will have been thrust unwillingly into an agency relationship" and "regardless of whether Mulhall can avoid contributing financial support to or becoming a member of the union…its status as his exclusive representative plainly *affects* his associational rights." Id. at 1287 (emphasis added). The language of Mulhall, however, must be read in context. Mulhall decided the issue of standing in relation to an alleged § 302 violation of the federal Labor-Management Relations Act. The court held only that plaintiff pled enough "to allow him to get his ticket stamped for admission to the federal court…" id., but Mulhall did not hold, and does not stand for the proposition that a union's status as exclusive representative violates or unduly burdens Plaintiffs' associational rights. Notably too, the court in Mulhall stated that "'compulsory affiliation with . . . [a] union does not, *without more*, violate the First Amendment rights'" of employees. Id. at 1288 (quoting Lehnert, 500 U.S. at 517) (emphasis

12

added). Here, SEIU's role as exclusive representative, without more, does not violate Plaintiffs' First Amendment rights.

Plaintiffs may contend that their status as small home businesses caring for children in their homes, distinguishes, in a First Amendment sense, this case from the more traditional employer-employee relationship. While there is a difference, the difference, rather than associating SEIU's speech with Plaintiffs, in reality further disassociates SEIU's speech from Plaintiffs. For example, in Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Bos., 515 U.S. 557 (1995), the Supreme Court held the private organizer of the St. Patrick's Day parade in South Boston could not be forced to include, a group they preferred to exclude. In so holding, the Supreme Court reasoned that the group's "participation would likely be perceived as having resulted from the [private organizer's] customary determination about a unit admitted to the parade, that its message was worthy of presentation and quite possibly of support as well." Id. at 575. The Supreme Court also noted that parades, in contrast to cable television providers are "not understood to be neutrally presented or selectively viewed," and thereby further explaining why the parade organizer could exclude a group of marchers while a cable television provider must serve as a conduit to certain speakers. Id. SEIU's expressive activity as exclusive representative for the Providers would not "likely be perceived" as associating the Providers with SEIU's statements. SEIU derives its role from a majority vote election, not a mandatory participation process requiring consensus to produce an exclusive representative. Thus, here, as to those Providers who did not vote, or who are not members of SEIU, "no reasonable person would believe the '[Providers] agreed[d] with any speech by [SEIU]." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 457 (2008) (Roberts, C.J., concurring) (explain parenthetically and quoting Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547

13

U.S. 47, 65 (2006)). The Supreme Court, speaking through Chief Justice Roberts, examined whether listeners would make the objected to association:

> I do think, however, that whether voters perceive the candidate and the party to be associated is relevant to the constitutional inquiry. Our other forced-association cases indicate as much. In BSA v. Dale, 530 U.S. 640, 653, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000), we said that Dale's presence in the Boy Scouts would "force the organization to send a message . . . [to] the world" that the Scouts approved of homosexuality. In other words, accepting Dale **would lead outsiders to believe** the Scouts endorsed homosexual conduct. Largely for that reason, we held that the First Amendment entitled the Scouts to exclude Dale. Id., at 659, 120 S. Ct. 2446, 147 L. Ed. 2d 554. Similarly, in Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc., 515 U.S. 557, 115 S. Ct. 2338, 132 L. Ed. 2d 487 (1995), we allowed the organizers of Boston's St. Patrick's Day Parade to exclude a pro-gay rights float because the float's presence in the parade **might create the impression** that the organizers agreed with the float-sponsors' message. See id., at 575-577, 115 S. Ct. 2338, 132 L. Ed. 2d 487.

Id. at 459 (emphasis added).

Here, this Court sees little chance if any, that any "outsider' would be led to believe that Plaintiffs have accepted any SEIU message and little chance, if any, that SEIU's presence as exclusive representative might create the impression that Plaintiffs agree with their positions.[6]

In sum, in light of the applicable Supreme Court precedent, and the Act's provisions which allow all Providers to petition the government, present separate grievances, as well as the process established by the Commonwealth (which merely directs a particular state agency to negotiate with one entity chosen by a majority vote), it cannot be said that Plaintiffs have been compelled to associate with SEIU within the meaning of the First Amendment.[7]

---

[6] No party has suggested to the Court that consideration of the association issue requires further factual development. That is, although Plaintiffs opposed the Motion to Dismiss, they did not assert in their opposition that the question of association raised factual questions under the Complaint that the Court could not resolve on the pleadings alone.

[7] Finally, because this Court concludes that SEIU's exclusive representation does not infringe on Plaintiffs' First Amendment rights, the Defendants do not need to "demonstrate any special

14

CONCLUSION

Plaintiffs have raised a considered First Amendment challenge to a new state statute plowing relative new ground. The Court appreciates the parties' thoughtful briefs and the fine oral argument presented by counsel. For the reasons stated above, the Defendants' Motions to Dismiss, Doc. Nos. 21 and 23, are ALLOWED.  The Clerk shall enter judgment dismissing this action in favor of Defendants and close this matter.

        SO ORDERED.

        /s/ Leo T. Sorokin
        Leo T. Sorokin
        United States District Judge

---

justification to sustain the constitutionality" of the Act. Univ. of Pa. v. EEOC, 493 U.S. 182, 201 (1990).